IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> HERBERT SANTIAGO DE JESUS, <br><br> Defendant | Criminal No.: 17-636 (DRD) |

## OPINION AND ORDER

Pending before the Court is Mr. Herbert Santiago-De Jesus' ("Defendant") *Motion to Suppress*. *See* Docket No. 80. In essence, Defendant requests the Court to suppress certain evidence seized by the Puerto Rico Police Department ("PRPD") after performing a search upon a 1993 Nissan Sentra ("Nissan Sentra") purportedly related to the facts of the instant case. The Government filed an *Opposition* averring various arguments as to the shortcomings that plague Defendant's request.[1] Therefore, after analyzing the Parties' contentions, the Court hereby **DENIES** Defendant's *Motion to Suppress*.

### I. ALLEGED RELEVANT FACTS

Pursuant to the *Superseding Indictment*, on September 10, 2016 and September 17, 2016, Defendant and other individuals, aiding and abetting each other, robbed money and other valuables from the Delgens Bar and Mi Barrita Familiar Bar, both located in Juana Diaz, Puerto Rico. During said robberies the assailants brandished pistols, also shot and wounded various victims with said weapons. *See* Docket No. 59. Purportedly, eyewitnesses to both robberies informed the PRPD that the assailants fled the scene driving an "old dark-colored Nissan car with discolored paint". Docket No. 89 at 3. The PRDP prepared a workplan where they identified Defendant and his brother, Jonathan Santiago-De Jesus, as possible suspects of the referenced robberies and planned for their arrest. *See* Docket No. 89-2.

---

[1] The Court highlights that Defendant failed to request and/or file a reply to the Government's *Opposition*.

On September 18, 2016, pursuant to the information provided by confidential informants, the PRPD identified the Nissan Sentra as the suspected getaway car used during the robberies and found said vehicle at the Singapur Ward, in Juana Diaz, Puerto Rico. *See* Docket No. 89 at 4. The PRPD seized the Nissan Centra and transported it to the PRPD police station in Ponce, Puerto Rico for further investigation. *Id.* On said date, the PRPD ran a record check on the Nissan Sentra through the Puerto Rico Department of Transportation's online portal and found that Ms. Judith Margarita López-Reyes ("López-Reyes") was the registered owner of the vehicle. *See* Docket No. 86-3.

On September 19, 2016, PRPD Agent Daisy González-González interviewed Defendant's father, Herbert Santiago-Santos ("Defendant's father"). *See* Docket No. 80-6. During said interview, he informed that Defendant had parked the Nissan Sentra near his house and that his younger son had moved the car to where the PRPD found it. *Id.* at 1. Moreover, he told that Defendant, and his brother Jonathan, had brought the car to his house and he had to break the car's ignition to turn it on. *Id.* Furthermore, Defendant's father informed that his younger son saw a bag containing firearms inside the Nissan Sentra. *Id.* Finally, he advised that Defendant always drove the vehicle, but he did not know what Defendant -and his brother Jonathan- did with the vehicle nor where they went while using the car. *Id.* at 2.

On the same date, the PRPD interviewed the registered owner of the vehicle, López-Reyes wherein she provided a voluntary *Sworn Statement* before Assistant District Attorney for the Puerto Rico Department of Justice, Atty. Carlos L. González-López. *See* Docket No. 89-4. Pursuant to the *Sworn Statement*, López-Reyes confirmed that she was the owner of the Nissan Sentra, that before June 13, 2016 her consensual partner had "pawned" that vehicle for drugs at the Leonardo Santiago Public Housing Project in Juana Diaz, Puerto Rico, and that she authorized the PRPD to conduct a search of the vehicle which she acknowledge was seized and held at the PRPD police station in Ponce. *Id.* Further, López-Reyes subscribed a PRPD search consent form. *See* Docket No. 80-3 and 89-5.

After obtaining López-Reyes consent form, the PRPD searched the Nissan Sentra and, underneath the driver's seat, found a black colored bag containing two .40 caliber Glock pistols -one of which was modified to shoot as a machinegun- and five loaded Glock ammunition magazines containing a total of 67

2

rounds of .40 caliber ammunition. "Subsequent forensic ballistic analysis revealed that [one of those] pistol[s] had been fired during the aforementioned robberies of Delgens Bar and Mi Barrita Familiar. In addition, police lifted fingerprints from inside the car; the fingerprints later matched Defendant's fingerprints." Docket No. 89 at 7.

On May 17, 2017 the U.S. Department of Justice, through agents of the the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), interviewed López-Reyes. *See* Docket No. 80-5. The corresponding ATF *Report of Investigation* essentially confirms the information provided by López-Reyes to the PRPD and Puerto Rico Department of Justice on September 19, 2016. Further, López-Reyes added that her consensual partner had bought the Nissan Sentra during 2015; that initially the car was registered to her daughters name; and that she did not know what happened to the vehicle after her consensual partner "pawned" it. On the other hand, on the same date, ATF agents also interviewed López-Reyes' consensual partner. *See* Docket No. 80-4. As to the Nissan Sentra, he corroborated that he bought the vehicle and that the vehicle was registered to López-Reyes' name. Moreover, the consensual partner informed that he did "pawn" the Nissan Sentra, he attempted to recover the vehicle but failed to do so and never saw it again. *Id*. at 2.

## II.   ARGUMENTS

Defendant's highlight the fact that the search performed by the PRPD agents upon the Nissan Sentra was made without a warrant. Defendant proceeds to challenge the consent provided by López-Reyes to the PRPD to perform the referend search. Subsequently, the Court notes that Defendant's assertions essentially hinge on the information contained in the aforementioned *ATF Reports*. First, Defendant contends that "the police extracted the consent to search the vehicle from a person who no longer had proprietary or privacy interest over the vehicle, since she was not the actual owner." Docket No. 80 at 3. Based on López-Reyes' consensual partner's interview before the ATF agents, Defendant believes that he was "the last know purchaser" of the Nissan Sentra and when he pawned the car for drugs, he "[a]ctually transferred its ownership to a third party, who became the actual new and rightful owner." *Id*. Grounded on this interpretation, Defendant avers that López-Reyes, although the registered owner of the Nissan Sentra, was

3

not the "true owner" of the vehicle and, therefore, the consent she provided the PRPD to search the vehicle was invalid. *Id*. at 4.

On the other hand, Defendant offers a rather interesting reading of the interview ATF agents conducted to Defendant's father. To that end, Defendant suggest that when his father informed the AFT agents that the Nissan Sentra was not "repaired" somehow he implied that the car was brought to Defendant for repairs and that as the car's mechanic he "had been exercising control for at least two weeks right around the time of the search." *Id*. at 6. Resting on said reasoning, Defendant contends that he had "legitimate possession" and "absolute control" over the Nissan Sentra, therefore he had a reasonable expectation of privacy with regards to the vehicle which allows him to challenge the PRPD's search and seizure.

In their *Opposition*, the Government contends that Defendant's arguments depend on an **incorrect reading** of the *ATF Reports*. First, the Government explains that Defendant is mistaken when he asserts that López-Reyes was not the "true owner" of the Nissan Sentra who could validly consent to the search of the vehicle. To that end, the Government provided the Court with the *Sworn Statement* that López-Reyes gave to the Puerto Rico Department of Justice and a certification of the Puerto Rico Department of Transportation which evidences that, at the time of the search of the vehicle, López-Reyes was the registered owner. Therefore, the Government insists that the consent provided by López-Reyes to the PRPD was valid and, therefore, the search was legal.[2]

On the other hand, the Government contends that the "pawning" of the Nissan Sentra for drugs, performed by López-Reyes' consensual partner, was not a valid transaction under Puerto Rico law that would effectively transfer the property right to a third person. *See* Docket No. 89 at 17-20. Moreover, the Government highlights the fact that Defendant did not aver, nor the record evinces, that López-Reyes, as registered owner of the Nissan Sentra, gave her consent to her consensual partner for him to dispose of the vehicle in any way. Consequently, the Government reasons that although López-Reyes consensual partner

---

[2] Alternatively, the Government believes that the search falls within the "automobile exception" to the Fourth Amendment's warrant requirement.

did "pawn" the Nissan Sentra and was unable to recover it, said situation did not deprive López-Reyes of her faculty of providing the PRPD with authorization to search the vehicle on September 19, 2016.

Furthermore, the Government contends that Defendant's theory is that he contracted as a mechanic to repair the Nissan Sentra, and therefore had control over the vehicle and an expectation of privacy with regards to it, is unsubstantiated. To contest this theory, the Government highlights that there is no evidence on the record that Defendant was hired by the Nissan Sentra's lawful owner as a mechanic nor did Defendant even provide a statement -sworn or otherwise- as to that effect.[3] Pursuant to the above, the Government advances that Defendant has no standing to challenge the search performed upon the Nissan Sentra by the PRPD.

### III.     LEGAL STANDARD

#### A. *Standing.*

The Fourth Amendment prohibits unreasonable searches and seizures. *See* Terry v. Ohio, 392 U.S. 1, 9 (1968). "A Fourth Amendment claim requires a two-step analysis. The first question is whether a Fourth Amendment right exists. The second is whether, in a case where there is a Fourth Amendment right, the search and seizure were reasonable." U.S. v. Swart, 679 F.2d 698 (7th Cir. 1982). Therefore, as a threshold matter, a defendant must show that he has standing to challenge the search. *See*, *e.g.*, U.S. v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988) ("Before embarking upon the merits of a suppression challenge, a criminal defendant must show that he had a reasonable expectation of privacy in the area searched and in relation to the items seized."). In order to establish standing, a defendant must demonstrate a "legitimate expectation of privacy in the area searched or the item seized." United States v. Vilches-Navarrete, 523 F.3d 1, 13 (1st Cir. 2008) (internal citations omitted). To succeed, the defendant "must show that he had both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable." *Id.* (*citing* California v. Greenwood, 486 U.S. 35, 39 (1988)); *see* United States v. Rheault, 561 F.3d 55, 59 (1st Cir.

---

[3] The Government also highlights that "Defendant has claimed no ownership or possessory interest in the items found inside the Nissan Sentra. That further undermines the Motion's assertion of standing to challenge the search of the car." Docket No. 89 at 11.

5

2009). The "burden of establishing that [an individual] had a reasonable expectation of privacy with respect to the area searched or […] the items seized." United States v. Rodríguez-Lozada, 558 F.3d 29, 37 (1st Cir. 2009) (internal citations omitted). "[F]aliure to present evidence with respect to such an expectation prevents a defendant from making a claim for suppression under the Fourth Amendment." *Id.* (*citing* United States v. Samboy, 433 F.3d 154, 162 (1st Cir. 2005)). The First Circuit's standard on this issue is uncontroverted, an individual cannot have a legitimate expectation of privacy in a place where he lacks actual permission to be present. *See* United States v. Battle, 637 F.3d 44, 49 (1st Cir. 2011) (defendant's expectation of privacy was unreasonable, as he did not have actual permission to be in the residence); United States v. McCarthy, 77 F.3d 522, 535 (1st Cir. 1996) (defendant did not have legitimate expectation of privacy in items left at a trailer after he was told to vacate the trailer); United States v. Lnu, 544 F.3d 361, 366 (1st Cir. 2008) (defendant lacked reasonable expectation of privacy in storage locker that he neglected to pay rent on).

In the context of a vehicle search, a defendant must show "a property [or] a possessory interest in the automobile" to establish a reasonable expectation of privacy. U.S. v. Symonevich, 688 F.3d 12, 19 (1st Cir. 2012). That is, the defendant bears the burden of establishing "that he gained possession from the owner or someone with authority to grant possession." U.S. v. Valdez Hocker, 333 F.3d 1206, 1208 (10th Cir. 2003); *see* United States v. Muhammad, 58 F.3d 353, 355 (8th Cir. 1995)("[D]efendant must present at least some evidence of consent or permission from the lawful owner/renter to give rise to an objectively reasonable expectation of privacy.") There is "no bright-line rule that governs whether a person has a reasonable expectation of privacy in vehicle; instead the court considers a number of factors." U.S. v. Almeida, 748 F.3d 41, 47 (1st Cir. 2014). The following factors are to be considered:

> Ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case. We look, in short, to whether or not the individual though of the place (or the article) as a private one, and treated it as such.

*Id.* (*citing* Aguirre, 839 F.2d at 856-57).

### B. *Consent.*

A warrantless search of a suspect's premises is, *per se*, unreasonable under the Fourth Amendment unless the government shows that the search falls within one of a carefully defined sets of exceptions, such as a valid consent. *See* Florida v. Royer, 460 U.S. 491, 497 (1983); Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); United States v. Tibolt, 72 F.3d 965, 968–69 (1st Cir.1995), *cert. denied*, 518 U.S. 1020 (1996). Accordingly, the government has the burden of proving whether the consent obtained by the defendant was voluntarily given. *See* United States v. Mendenhall, 446 U.S. 544, 557 (1980).

To be valid, such consent must be provided by a suspect through either word or act, notwithstanding the words or conduct must be unambiguous, and the consent must be freely and voluntarily given. Although in some circumstances courts may infer consent from defendant's cooperative attitude, it is the government the one bearing the burden of proof to establish consent. *See* Royer, *supra*, at 497; Schneckloth, *supra*, at 222. However, a search conducted pursuant to consent may not exceed the scope of the consent sought and given. *See* Florida v. Jimeno, 500 U.S. 248, 251 (1991); United States v. Donlin, 982 F.2d 31, 33 (1st Cir.1992). Furthermore, the question of voluntariness is one of facts to be determined from the totality of the circumstances. *See* United States v. Mendenhall, 446 U.S. 544, 557 (1980); United States v. Barnett, 989 F.2d 546, 554–555 (1st Cir.), *cert. denied*, 510 U.S. 850 (1993).

Among the factors that courts have considered in evaluating the voluntariness of the consenting party are: the suspect's age, education, experience, intelligence, and knowledge of the right to withhold consent; whether the person was advised of his constitutional rights; whether permission to search was obtained by coercive means or under inherently coercive circumstances; whether the person was in custody and Miranda Rights have been given; whether the person was told a search warrant could be obtained; and the length and nature of the detention and interrogation. *See* United States v. Barnett, 989 F.2d at 554–555; United States v. Al–Azzawy, 784 F.2d 890, 895 (9th Cir.1985), *cert. denied*, 476 U.S. 1144 (1986); United States v. Alfonso, 759 F.2d 728, 741 (9th Cir.1985); United States v. Salvador, 740 F.2d 752, 757–58 (9th Cir.1984), *cert. denied*, 469 U.S. 1196 (1985). However, the Court notes that no single factor will, by itself,

be conclusive as to the voluntariness of the consent. Further, the question of voluntariness is one of the facts to be determined from the totality of the circumstances.

Finally, as further guidance, the Court recurs to the guidelines established by the Ninth Circuit that enable the trial judge to determine whether effective consent was obtained prior to conducting a warrantless search,

> "It must show that there was no duress or coercion, express or implied. The consent must be 'unequivocal and specific' and 'freely and intelligently given'. There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony. 'Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights'. Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact. <u>The government's burden is greater where consent is claimed to have been given while to defendant is under arrest</u>."

<u>United States v. Page</u>, 302 F.2d 81, 83–84 (9th Cir. 1962)(emphasis ours).

## IV.    ANALYSIS AND CONCLUSION

After analyzing the Parties' contentions, the Court determines the following. First, Defendant has not managed to demonstrate -or that he will be able to demonstrate- that he had an expectation of privacy with regards to the Nissan Sentra. Although the *ATF Report* regarding the interviewed performed as to Defendant's father contains the word "repair", there is no other piece of information or evidence that would allow the Court to conclude that Defendant was employed as a mechanic to repair the vehicle. Furthermore, there is not a singled piece of information, evidence nor statement made by Defendant, that would allow the Court to conclude that he actually worked as a mechanic, that the owner of the Nissan Sentra hired him as a mechanic nor when said employment purportedly occurred. *See* <u>United States v. Sanchez</u>, 943 F.2d 110, 114 n.5 (1st Cir. 1991)(Defendant "did not meet his burden of showing acquiescence by [the registered owner of the car, Rafael Penta,] in his use of the car"). Therefore, the Court finds that Defendant's theory is no more than an unsubstantiated leap of logic.

On the other hand, the Court understands that Defendant's assertions are premised on an incorrect reading of the *ATF Reports*. To that end, the record evinced that López-Reyes' consensual partner purchased the Nissan Sentra around 2015 and that it was registered to López-Reyes' daughter for some time. *See* Docket No. 89-6. However, it is also evinced that López-Reyes was registered as the owner of

the vehicle since June 13, 2016. Therefore, by the time López-Reyes provided the PRPD with consent to search the vehicle, it was her, not her daughter nor her consensual partner, who was the registered owner of the Nissan Sentra. Taking the above into account, the Court finds that the PRPD performed the search of the Nissan Sentra after obtaining valid consent from the owner of the vehicle and, consequently, did not require a search warrant to do so. *See*, *e.g.*, Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44, 36 L. Ed. 2d 854 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.").

Moreover, Defendant's theory that López-Reyes' consensual partner validly transferred the ownership to a third-party when he "pawned" it for drugs also fails. There is no information, evidence nor assertion from the Defendant that might lead the Court to conclude that López-Reyes allowed her consensual partner -which acknowledged that the vehicle was registered to her name- to "pawn" the Nissan Sentra. Furthermore, pursuant to Puerto Rico law, the Court finds that the "pawning" of the Nissan Sentra for drugs was an invalid contract. Article 1227 of Puerto Rico's previous Civil Code states that "[c]ontracts without consideration or with an illicit one have no effect whatsoever. A consideration is illicit when it is contrary to law and good morals." 31 L.P.R.A. § 3432; *see* Sanchez Rodriguez v. Lopez Jimenez, 116 D.P.R. 172, 181 (1985). Therefore, once the consideration is identified as illicit, the contract is null and inexistent. *See* Col. Int'l Sek P.R., Inc. v. Escriba, 135 D.P.R. 647, 665 (1994). Certainly, the sale of illegal drugs is contrary to the law, therefore the "pawning" of the Nissan Sentra for drugs could not create a valid contract that would transfer López-Reyes' property interest in the vehicle to a third person. Considering the aforesaid, Defendant's theory that the third person who received the Nissan Sentra from López-Reyes' consensual partner was the valid owner who could only offer consent to the search in question is meritless.

Pursuant to the above, the Court finds that Defendant did not have an expectation of privacy with regards to the Nissan Sentra and, consequently, has no standing to challenge the search performed by the PRPD on September 19, 2016. On the other hand, the Court concludes that López-Reyes was the owner of the vehicle at the time the referenced search was performed and validly provided the PRPD with

authorization to perform the search. Therefore, although no warrant was issued to search the Nissan Sentra, the search was valid under the Fourth Amendment.

Considering the above, the Court hereby **DENIES** Defendant's *Motion to Suppress*.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, May 17, 2021.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge